■ D&R GLOBAL SELECTIONS, S.L., Respondent, v BODEGA OLEGARIO FALCÓN PIÑEIRO, Appellant. [934 NYS2d 19]—

This dispute, which raises issues of long-arm jurisdiction, involves two Spanish businesses, neither of which is authorized to do business in New York or has offices, employees, telephone listings, or bank accounts in New York. It is undisputed that plaintiff, a limited liability company, and defendant, a Spanish winery, entered into an oral agreement in or about March 2005 in Spain. Under the agreement, plaintiff agreed to procure American importers for defendant's wine in exchange for commission payments at an agreed rate. The parties dispute the contract's duration. Plaintiff alleges that commissions were due throughout defendant's entire relationship with any importer plaintiff found for it; defendant contends that commission payments were required for a period of one year.

Pursuant to the agreement, in May 2005, plaintiff introduced defendant to Kobrand Corp., a New York wine and liquor importer and distributor, and, beginning that November, with plaintiff's assistance, defendant's wine was shipped to Kobrand in New York. Defendant paid plaintiff commissions through November 2006; all payments were made in Spain in the Euro currency. Plaintiff also represented defendant at wine events throughout the United States, and it is alleged, and not disputed, that defendant's representatives accompanied plaintiff to Kobrand's promotional event for its Spanish wine portfolio in New York City.

Defendant later entered into its own exclusive distribution agreement with Kobrand, and, in January 2007, defendant discontinued commission payments to plaintiff for the wine it sold to Kobrand. Defendant alleges that the agreement was properly terminated after the one-year period elapsed; plaintiff contends that its entitlement to commissions from sales to Kobrand continued for as long as defendant sold its wine to Kobrand.

Plaintiff commenced this action for breach of contract, quantum meruit, an accounting, and unjust enrichment on November 9, 2007. Upon receipt of court papers from plaintiff in the mail at its Spanish business address, defendant's sales and marketing manager, Angeles Mosteiro, sought advice from defendant's Spanish attorney, who instructed that defendant need not take action on the complaint because personal jurisdiction did not exist and because service of process was insufficient under both Spanish and New York law. Accordingly, defendant neither answered the complaint nor appeared in court, which resulted in a default being taken against it, and, after an assessment of damages, on November 12, 2009, a judgment for $133,570.21 was entered. On February 1, 2010, defendant moved to vacate the default judgment and dismiss the complaint, and Supreme Court denied the motion. Defendant now appeals, and for the reasons that follow, we reverse, and grant defendant's motion to vacate the default. However, we reject defendant's suggestion that the complaint must be dismissed at this time, under CPLR 5015 (a) (4), for lack of personal jurisdiction.

CPLR 302 (a) (1) authorizes the assertion of long-arm jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." Although CPLR 302 (a) (1) is a "single act statute," whereby physical presence is not required and one New York transaction is sufficient for personal jurisdiction, it is only applicable where the defendant's New York activities were purposeful and substantially related to the claim (*Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d 65, 71 [2006], *cert denied* 549 US 1095 [2006] [internal quotation marks and citation omitted]). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" (*Fischbarg v Doucet*, 9 NY3d 375, 380 [2007] [internal quotation marks and citation omitted]).

However, because it was not defendant, but plaintiff itself, that took action in New York, acting as defendant's agent, it is

necessary to consider the general rule that "an agent may not rely upon his or her own New York contacts on behalf of a principal to establish long-arm jurisdiction" (*id.* at 383). While there are limited circumstances in which in-state activity by a plaintiff conducted on a defendant's behalf may present a proper ground for asserting jurisdiction over the defendant, such as where the defendant actively ships its goods into New York for the plaintiff to sell on its behalf, the defendant must have "played a crucial role in creating the substance of the transaction, amounting to doing business in New York" (*see Courtroom Tel. Network v Focus Media*, 264 AD2d 351, 353 [1999] [internal quotation marks and citation omitted]).

However, the allegations and disputed points in the record preclude the conclusion as a matter of law that New York lacks any possible basis to assert jurisdiction over defendant. Although it was plaintiff alone who initially brought defendant's product into New York, and defendant did not itself initially undertake any purposeful business activities in New York during the period in which the parties' contract was concededly in effect, defendant's subsequent formation of an exclusive relationship with Kobrand, and its direct shipping of wine to Kobrand, may constitute the requisite purposeful business transactions in New York under CPLR 302 (a) (1). Of course, for jurisdiction to exist there must be an "articulable nexus" between the cause of action and defendant's New York business transactions (*McGowan v Smith*, 52 NY2d 268, 272 [1981]). But, particularly considering the parties' dispute regarding the terms of their oral contract, such a nexus may be established here. We need not rule definitively on that point in this context; we need only hold that defendant is not entitled to dismissal of the action for lack of personal jurisdiction.

We therefore turn to whether defendant established the requisite reasonable excuse and potentially meritorious defense to justify vacating its default under CPLR 5015 (a) (1).

Of course, failure to answer a complaint will not be excusable where it is "willful" or "part of a pattern of dilatory behavior" (*DaimlerChrysler Ins. Co. v Seck*, 82 AD3d 581, 582 [2011]). Furthermore, parties that fail to take steps to protect their interests, relying instead on their own incorrect assumptions and failing to consult with attorneys, despite being advised and placed on notice to do so, do not establish the existence of a reasonable excuse (*see Passalacqua v Banat*, 103 AD2d 769 [1984], *appeal dismissed* 63 NY2d 770 [1984]; *Tucker v Rogers*, 95 AD2d 960 [1983]). Additionally, "bare allegations of [attorney] incompetence" are insufficient to vacate a default judgment (*Spatz v Bajramoski*, 214 AD2d 436, 436 [1995]).

Here, however, defendant has put forth a reasonable excuse for its default. When defendant received the summons and complaint in the mail, its sales and marketing manager actively sought and relied on advice from its attorney that it later learned was inaccurate. Defendant's reliance on its law firm's advice was neither willful nor contumacious, but was reasonable and in good faith. Like the plaintiff in *Goldman v Cotter* (10 AD3d 289, 291 [2004]), defendant here did not intend to abandon its defense; it was simply acting in accordance with its attorneys' interpretations of New York and Spanish law.

Plaintiff's reliance on *Spatz v Bajramoski* (214 AD2d at 436) is misplaced. Unlike the "bare allegations of incompetence on the part of prior counsel" in that case, the facts in this case are set forth at length by defendant and its prior counsel. It is irrelevant how many times defendant was contacted about its persistent refusal to respond to the complaint, since defendant had been instructed by its attorney that declining to respond was the proper course of action.

The affidavit by defendant's sales and marketing manager, Angeles Mosteiro, to the effect that the oral agreement specified a one-year term for commission payments, which elapsed in December 2006, and that defendant had paid all the commissions owed thereunder, demonstrates a potentially meritorious defense (*see Tat Sang Kwong v Budge-Wood Laundry Serv.*, 97 AD2d 691, 692 [1983]).

Plaintiff failed to demonstrate that vacating the default would unjustly prejudice it, and the motion to vacate the default judgment was not untimely. Especially in view of New York's preference for resolving disputes on their merits, it is appropriate to vacate the default judgment and permit the matter to be addressed on its merits. Concur—Tom, J.P., Saxe, Moskowitz, Acosta and Abdus-Salaam, JJ.